UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LAMONT SPEARS,

                Petitioner,                Case No. 1:13-cv-1013

v.                                                  Honorable Gordon J. Quist

CINDI S. CURTIN,

                Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Factual Allegations

Petitioner Kevin Lamont Spears is incarcerated at the Oaks Correctional Facility. In 2008, following a trial in Kent County Circuit Court, he was convicted of assault with intent to murder, Mich. Comp. Laws § 750.83, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), felon in possession of a firearm, Mich. Comp. Laws § 750.244f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227(b)(a). On July 17, 2008, the trial court sentenced him as a habitual offender, fourth offense, Mich. Comp. Laws § 769.12, to the following prison terms: 25 to 60 years for the assault conviction, 20 to 50 years for the home invasion conviction, 6 to 30 years for the felon-in-possession conviction, and two years for the felony-firearm conviction.

Petitioner appealed his judgment of conviction and sentence to the Michigan Court of Appeals. In an opinion entered on December 10, 2009, that court vacated the assault conviction, affirmed the judgment on other grounds, and remanded the matter to the circuit court for a new trial on the assault charge. Petitioner subsequently appealed the appellate court's decision to the Michigan Supreme Court, which denied leave to appeal on May 25, 2010.

On September 12, 2011, Petitioner pleaded guilty to a lesser charge of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, and on October 13, 2011, the circuit court sentenced him to a prison term of 5 to 10 years for the assault conviction. Petitioner then appealed the amended judgment of conviction to the Michigan Court of Appeals and the Michigan Supreme Court. Those courts denied leave to appeal on May 15, 2012, and September 24, 2012, respectively. Petitioner timely filed the instant action on or about September 18, 2013, raising the following grounds for relief:

> I. IN RESPONDING TO A JURY QUESTION, THE TRIAL COURT INSTRUCTED THE JURY AS TO THE DEFINITION OF "MURDER" AS REQUESTED BUT THEN SPECIFICALLY INSTRUCTED THE JURY AGAIN THAT THE OFFENSE OF ASSAULT WITH INTENT TO MURDER REQUIRED THEM TO FIND THAT THE DEFENDANT INTENDED TO KILL[] THE VICTIM, DID THE INSTRUCTIONS AS A WHOLE FAIRLY PRESENT THE ISSUES TO BE TRIED AND SUFFICIENTLY PROTECT DEFENDANT'S RIGHT?
>
> II. UREA TALLEY SUFFERED THE TRAUMATIC EXPERIENCE OF BEING SHOT IN THE ABDOMEN, WHICH REQUIRED SURGERY AND A HOSPITAL STAY OF SEVERAL DAYS. FURTHERMORE, BOTH VICTIMS WERE IN THE HOME AT THE TIME DEFENDANT SHOT MULTIPLE TIMES INTO THE BASEMENT AND ERICA ALEXANDER WAS, IN FACT, AT THE TOP OF THE STAIRS READY TO HEAD DOWN WHEN THE SHOOTING OCCURRED BEFORE HIDING IN HER CLOSET IN FEAR FOR HER LIFE, DOES THE EVIDENCE SUBMITTED AT TRIAL SUPPORT THE SCORING OF THE CHALLENGED OFFENSE VARIABLES?
>
> III. OUR MICHIGAN SUPREME COURT HAS HELD THAT THE UNITED STATES SUPREME COURT'S DECISION IN BLAKELY DOES NOT APPLY TO MICHIGAN'S SENTENCING GUIDELINES SYSTEM[.] WERE DEFENDANT'S GUIDELINES IMPROPERLY ENHANCED IN VIOLATION OF THAT DECISION?

(Attach. to Pet., docket #1, Page ID#15.)

## Discussion

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United

States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001); *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411;

*accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Richter*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### A. Claim I: Improper jury instructions

Petitioner first claims that the trial court's jury instructions as to the offense of assault with intent to murder were improper. This claim is moot because it was fully addressed by the Michigan Court of Appeals when it vacated Petitioner's conviction for assault with intent to murder. *See People v. Spears*, No. 286911 (Mich. Ct. App. Dec. 10, 2009).

### B. Claim II: Improper scoring of offense variables

Next, Petitioner claims that the state court improperly scored his sentence guidelines range under the Michigan sentencing guidelines, because there was insufficient evidence to support the score. Petitioner elaborates on his claim as follows:

> The record reflects, the petitioner, and alle[]ged victim Eric[a] Alexander, were in contact with one another. For the next few days after the shooting, Eric[a] continued to talk with Defendant, asking him why he did. . . . Defendant was apologetic and felt bad that Talley had been injured. . . . Clearly, indicating lack of fear, and even apprehen[s]ion.

(Pet., docket #1, Page ID#7.) In his appellate brief, Petitioner asserted that the trial court scored offense variables 4 and 9 incorrectly based on the available evidence. (Attach. to Pet., docket #1-2, Page ID##58-59.) The Michigan Court of Appeals rejected this claim as follows:

> Defendant next contends that the trial court abused its[] discretion when it scored offense variable ("OV") 4, MCL 77.34, for ten points when there was no evidence to support that either the victim or defendant's former girlfriend suffered psychological harm as a result of the shooting. MCL 777.34(1)(a) provides that OV 4 may be scored for ten points if "[s]erious psychological injury requiring professional treatment occurred to a victim." When determining the appropriate score for OV 4, the fact that the victim did not seek professional treatment is not conclusive. MCL 777.34(2). In [the] present case, defendant's former girlfriend testified that she ran and hid in a closet until the shooting ended and that she was "scared" during the shooting. This was sufficient evidence to justify the trial court's decision to score OV 4 for ten points. *See People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004).

> Defendant also argues that OV 9, MCL 777.39, was misscored for ten points because defendant's former girlfriend was never in any danger of being injured or killed as a result of the gunshots. OV 9 may be scored for 10 points if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . ." MCL 777.39(1)(c). "[O]nly people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." *People v Sargent*, 481 Mich 346, 351; 750 NW2d 161 (2008). OV 9 must be scored only for conduct that occurred during the sentencing offense. *People v McGraw*, 484 Mich 120, 133-134; 771 NW2d 655 (2009). In the present case, evidence presented at trial revealed that while defendant was invading the home, he shot a gun several times toward the area of the basement stairs. Defendant's former girlfriend was at the top of the basement stairs when the shooting began, which established she was in the immediate vicinity when the shooting occurred. Thus, the score of ten points was proper.

*Spears*, slip op. at 3.

Claims concerning the improper scoring of sentencing guidelines are state-law claims that typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). Federal courts may grant the writ of habeas corpus only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62 (1991). Petitioner's claim that the state court improperly scored his sentence under the sentencing guidelines raises only a question of state law; thus, it is not cognizable in these proceedings.

Alternatively, to the extent Petitioner asserts that the state court's factual findings were unreasonable, he offers no clear and convincing evidence to rebut the presumption that they are correct. The mere fact that he spoke with the victim and apologized to her after the shooting

does not undermine the state court's conclusion that she suffered psychological harm as a result of his actions, or that she was in danger of physical injury when he committed the charged offense. Consequently, Claim II is not a meritorious claim.

### C. Claim III: Improper enhancement of sentence

Petitioner also claims that the trial court improperly enhanced the sentencing guidelines range in violation of the Supreme Court's decision in *Blakely*, because the enhancement relied on facts that were not proven at trial. The Michigan Court of Appeals rejected this claim as follows:

> Defendant argues that the offense variables were scored based on facts found by the trial court and not proven to a jury beyond a reasonable doubt and that this fact-finding increased the legislatively authorized range of punishment in violation of his Sixth Amendment rights, *Blakely v Washington*, 542 US 296; 124 S Ct 2531; 159 L Ed 2d 403 (2004), and his right to due process, *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000). Defendant further argues that the Court wrongly decided *People v Drohan*, 475 Mich 140, 164; 715 NW2d 778 (2006). Michigan's sentencing scheme is unaffected by the United States Supreme Court holdings, *Blakely*, *supra* at 296, and *Apprendi*, *supra* at 466, because Michigan utilizes an indeterminate sentencing scheme in which the trial court sets the minimum sentence but can never exceed the statutory maximum sentence. *Drohan*, supra at 162-164. Though defendant argues that *Drohan*, *supra*, was wrongly decided, we are bound to follow decisions issued by our Supreme Court. *People v Hall*, 249 Mich App 262, 270; 643 NW2d 253 (2002), remanded 467 Mich 888 (2002), on remand 256 Mich App 674; 671 NW2d 545 (2003).

*Spears*, slip op. at 3-4.

*Blakely* concerned the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge in that case found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that

increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

As indicated by the Michigan Court of Appeals, the sentencing system in Michigan is unlike that of the State of Washington. The State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing Mich. Comp. Laws § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)). Petitioner claims that *Drohan* was wrongly decided, but the Sixth Circuit has also held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007). Consequently, the state court correctly determined that the rule in *Blakely* does not apply.

On June 17, 2013, the United States Supreme Court extended the rule in *Apprendi* and *Blakely*, holding that any fact that increases a mandatory *minimum* sentence for a crime is an element that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S.Ct. 2151, 2155 (2013). *Alleyne* overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt. *Alleyne*, 133 S.Ct. at 2157–58. It is questionable whether *Alleyne* applies to Michigan's sentencing scheme, but when Petitioner's

conviction became final, *Harris* was still good law. A federal district court may only grant habeas relief if it finds that the state court's decision was contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States" 28 U.S.C. § 2254(d). "The law in question must have been clearly established at the time the state-court decision became final, not after." *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (citing *Williams v. Taylor*, 529 U.S. 362, 380 (2000)). Consequently, even if *Alleyne* applies, the state court's decision was not contrary to federal law clearly established by the United States Supreme Court. *See* 28 U.S.C. § 2254(d).

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under

Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: October 16, 2013         /s/ Gordon J. Quist
                                GORDON J. QUIST
                                UNITED STATES DISTRICT JUDGE